# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

STEVEN M. WILLIAMS,

    Plaintiff,

v.    Case No. 2:21-cv-00436

BOB BARKER COMPANY, INC.,
OFFICER MURPHY, LIEUTENANT DAVID CAVENDISH,
and TIMOTHY PERKINS,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are motions to dismiss filed by Defendants Officer Murphy ("Murphy"), Lieutenant David Cavendish ("Cavendish"), and Timothy Perkins ("Perkins") (ECF No. 14) and Bob Barker Company, Inc. ("BBCI") (ECF No. 22), which are fully briefed and ripe for adjudication.

    I.    *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On August 4, 2021, Plaintiff filed a complaint alleging that he was injured by a defective toothbrush supplied by BBCI, a North Carolina corporation, and denied medical treatment for those injuries by the defendant correctional officers. (ECF No. 2). According to the complaint, on May 26, 2020, Plaintiff, who is incarcerated at the Mount Olive Correctional Complex ("MOCC"), was issued a toothbrush by Defendant Murphy. (*Id*. at 2, ¶ 8). While brushing his teeth around 1:00 a.m., Plaintiff noticed bristles falling

out of the toothbrush, and discovered pieces of metal stuck in his gums, which caused them to bleed. (*Id.* at 2-3, ¶¶ 9-11). Plaintiff used the emergency call button in his cell, advised Murphy of his condition, and requested medical treatment. Shortly thereafter, Perkins arrived at his cell and Plaintiff again requested medical assistance. Both Murphy and Perkins advised Plaintiff that medical staff was not coming to assist him. (*Id.* at 3, ¶¶ 12-18). Murphy inspected another toothbrush and discovered it had a similar defect. (*Id.*, ¶ 19).

After Plaintiff asked to speak to a "gold badge" about the denial of medical treatment, Defendant Cavendish arrived but he also told Plaintiff that medical staff would not be coming to assist him. Defendants instructed Plaintiff to rinse his mouth out with salt water and directed him to put in a sick call request to be seen the following day. Cavendish gave Plaintiff a saltshaker and took pictures of his injuries as well as the toothbrush and metal flakes. (*Id.* at 4, ¶¶ 20-24). Plaintiff alleges that his mouth continued to bleed and that he was in pain throughout the night. (*Id.*, ¶ 24). He asserts that the actions of Murphy, Perkins, and Cavendish constituted deliberate indifference to a serious medical need in violation of the Eighth Amendment. (*Id.* at 4-5, ¶¶ 26-27, 29-30).

The complaint further alleges that BBCI "is under contract with the DOCR and is liable for personal injury and product liability under West Virginia law, as well as violations of the Fifth, Eighth and Fourteenth Amendments, for 'negligence' and 'reckless endangerment' due to an unsafe product [BBCI] knew or should have known was dangerous and would cause harm." (*Id.* at 5, ¶¶ 28, 30). Plaintiff seeks declaratory relief and monetary damages from each defendant. (*Id.* at 5-6).

## II.   STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.*

3

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

### III. DISCUSSION

A. *The complaint fails to state a claim upon which relief can be granted against Defendants Murphy, Perkins, and Cavendish.*

1. Eleventh Amendment immunity.

In their motion to dismiss, Defendants Murphy, Perkins, and Cavendish (collectively "the Correctional Defendants") first assert that Plaintiff's complaint fails to state proper claims against them in their official capacities because they are not "persons" under 42 U.S.C. § 1983 and are further immune from liability under the Eleventh Amendment. (ECF No. 15 at 4-5).

The vehicle for Plaintiff's federal constitutional claims is section 1983 of Title 42 of the United States Code, which provides in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983. While not in itself a source of substantive rights, section 1983 provides a "method for vindicating federal rights elsewhere conferred by those parts of the United

4

States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To successfully establish a section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) [Emphasis added]. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that neither a State, including its agencies, nor its officials acting in their official capacities, are "persons" under § 1983. Thus, the WVDCR and Moore and Aldridge, acting in their official capacities, are not "persons" for the purposes of § 1983. (*Id.* at 5-6).

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent or a waiver by statute, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984). This immunity extends to state employees in their official capacities as well. Therefore, as aptly noted by the Correctional Defendants' motion, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a plausible claim for relief against them in their official capacities.

2. Eighth Amendment claims against the Correctional Defendants.

Plaintiff claims that the individual conduct of the Correctional Defendants constituted deliberate indifference to a serious medical need in violation of his Eighth Amendment rights. In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the defendant had a "sufficiently culpable state of mind;'" that is, a "deliberate indifference to inmate health or safety." *Id.*, at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Serious medical needs" are those which have been diagnosed by a physician as

mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

The burden of demonstrating deliberate indifference to a serious medical need is very high. It is well-settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer [v. Brennan]*, 511 U.S. [825] 832-35 [(1994)]; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Corr. Ctr. Med. Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). However, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need. *See Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *see also Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

The Correctional Defendants assert that Plaintiff's bleeding gums were not a "serious medical need" to satisfy the objective prong of the deliberate indifference standard. As noted in their brief, "while a dental condition may rise to a constitutional violation if left untreated for an extended period of time, mere bleeding gums is not sufficient." *See Shapley v. Nev. Bd. of State Prison Comm'rs.*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that a delay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation) (other citations omitted). (ECF No.

7

15 at 10).

The Correctional Defendants further assert that they are entitled to qualified immunity on Plaintiff's claims against them. (*Id.* at 11-13). The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties" and "[o]fficials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009).

To determine whether a government official is entitled to qualified immunity on federal constitutional claims, the court must determine: "(1) whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the official's actions violated a constitutional right; and (2) whether that right was clearly established such that a reasonable person would have known their conduct was unlawful. *See Meyers v. Balt. County*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

The Correctional Defendants contend that there is no clearly established law indicating that bleeding gums, standing alone, constitute a serious medical need or that treating an isolated incident of bleeding gums with a saltwater rinse, without more, constitutes deliberate indifference to a serious medical need. Thus, they contend that they did not knowingly disregard a serious medical need in violation of clearly established law or transgress a bright line rule. (ECF No. 15 at 11-13).

Plaintiff, on the other hand, contends that the bleeding in his mouth was significant and that the saltwater rinse caused him more pain overnight. Thus, he asserts that his medical need was serious and the delay in providing him with a medical examination and treatment until the next day prolonged his pain and suffering. (ECF No. 21 at 6-7). He further contends that the Correctional Defendants should be denied qualified immunity. (*Id.* at 8).

The Correctional Defendants' reply brief largely reiterates the arguments made in their initial brief. (ECF No. 25). They further assert that Plaintiff has failed to identify any clearly established legal authority that would have put them on notice that their conduct conclusively violated Plaintiff's constitutional rights. (*Id.* at 8).

Here, Plaintiff's isolated incident of bleeding gums was not immediately life-threatening. He was directed to rinse his mouth with salt water to help stop or reduce the bleeding and to put in a sick call request so that he could be examined by medical personnel the following day. Thus, his condition was not sufficiently serious and any delay in receiving treatment other than the saltwater rinse did not give rise to an objectively serious medical need to which the Correctional Defendants were deliberately indifferent. *See, e.g., Chamberlain v. Suggs*, No. 5:14-CT-3173-H, 2015 WL 5607788, at *5 (E.D.N.C. Sept. 23, 2015) (bleeding gums were not a serious medical need); *Wilson v. Coleman*, No. 7:09-cv-00325, 2009 WL 3055268, at *6 (W.D. Va., Sept. 24, 2009) (no deliberate indifference existed where prisoner did not require emergency dental care for bleeding gums). Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible Eighth Amendment violation against any of the Correctional Defendants and that those Defendants are entitled to qualified immunity on Plaintiff's claims against them.

    C.    *The complaint fails to state a plausible claim for relief against BBCI.*

    1.    Federal constitutional claims.

Plaintiff's complaint also alleges that BBCI's provision of an unsafe product somehow violated his rights under the Fifth, Eighth, and Fourteenth Amendments. However, as addressed in its motion documents, BBCI is not a state actor and thus, no plausible federal constitutional claims can be asserted against it under § 1983.

The element of "acting under color of state law" for the purposes of § 1983 requires conduct that is "fairly attributable to the state." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (listing approaches to state action analysis, including "public function," "state compulsion," "nexus," and "joint action" tests). Thus, a "person" who is alleged to have violated a plaintiff's civil rights under this section "must either be a state actor or have a sufficiently close relationship with the state actor so that the court would conclude that the private action may be 'fairly treated as that of the State itself.'" *Id.* at 506 (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)). "[A] presumption exists that private parties are not generally acting under color of state law." *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).

The Supreme Court has held that joint action between a state actor and a private actor, alone, does not transform the private actor's conduct into "state action." *DeBauche*, 191 F.3d at 506. Rather, courts must "examine the interdependence between the state action and private actor's conduct showing that the state relied upon the private actor's conduct for continued viability." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724 (1961). Courts should additionally consider whether the state has control over the private actor's conduct, such that the private actor is "acting as a surrogate of the state." *Id.* at

10

725. The Fourth Circuit has employed four categories under which a private party may be deemed a state actor:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusive public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993). "If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state." *Id*. BBCI's conduct does not satisfy any of these criteria.

BBCI's memorandum of law in support of its motion to dismiss addresses these four approaches to determine whether state action is present. First, BBCI asserts:

> Bob Barker was not performing a public function. As alleged, Bob Barker was simply acting as a vendor, selling MOCC toothbrushes for the facility to supply to prisoners – no different than the companies that sell food used in the prison cafeteria. The selling of toothbrushes to a prison does not rise to the level of performing a public function. Only third parties deeply involved with a prison, such as private contractors who are responsible for managing or operating prisons, have been found to be state actors under the public function test. *See, e.g., Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996) (holding that private company performing function of incarcerating inmates was acting under color of state law); *Kesler v. King*, 29 F. Supp.2d 356, 370-71 (S.D. Tex. 1998) (same); *Giron v. Corrections Corp. of Am.*, 14 F. Supp.2d 1245, 1247-51 (D.N.M. 1998) (holding that corrections officer who was employed by private company that operated prison and who raped inmate, was state actor under Section 1983); *Blumel v. Mylander*, 919 F. Supp. 423, 426-27 (M.D. Fla. 1996) (holding private contractor that contracted with Florida county to operate jail was state actor for purposes of § 1983). Plaintiff did not and cannot allege that Bob Barker engaged in any such activities so intertwined with MOCC wherein Bob Barker could be considered acting under color of state law. *See Evans v. Skolnik*, 637 F. App'x 285 (9th Cir. 2015) (holding that private telephone companies contracting with prison were not state actors); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 919 (9th Cir. 2011) (holding that private organization contracted to provide religious services to prisoners was not a state actor); *Bomer v. Access Catalog Co.,* 75 F. App'x 382, 383 (6th Cir. 2003) (holding that vendor that provided televisions and cassette players was not a state actor).

11

(ECF No. 23 at 4-5). The undersigned agrees that BBCI was not performing a "public function."

BBCI further asserts, and the undersigned also agrees, that BBCI was not a state actor under the "state compulsion" test. As noted in its brief:

> Under the state compulsion approach, a private actor becomes a state actor when some state law or custom requires or compels a certain course of action. *George v. Pac.-CSC Work Furlough*, 91 F.3d 1227, 1232 (9th Cir. 1996), *citing Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 508 (9th Cir. 1989). Plaintiff has not alleged any state law or custom requiring or compelling Bob Barker to engage in any course of action.

(*Id.* at 5). Nor can the conduct of BBCI be fairly considered to be the action of the state itself.

> Plaintiff has also failed to allege that there was a sufficiently close nexus between the state and the challenged action of Bob Barker such that the action of the latter may be fairly treated as that of the state itself. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). Plaintiff has not pled facts that support any claim that there was a close nexus between Bob Barker selling toothbrushes to MOCC and the State. Plaintiff has merely contended that Bob Barker was a party to a contract with MOCC. Without more, Bob Barker's alleged contract with MOCC to supply toothbrushes does not show a nexus sufficient to consider Bob Barker a state actor. Joint action exists when the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Gorenc*, 869 F.2d at 507 (alteration in original), *quoting Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961). There are no facts within Plaintiff's Complaint that support the notion that the State and Bob Barker were operating interdependently. Plaintiff merely alleges Bob Barker sold toothbrushes to MOCC.

(*Id.* at 6).

BBCI argues that this case is analogous to the Sixth Circuit's decision in *Bomer v. Access Catalog Co.*, 75 F. App'x 382, 383 (6th Cir. 2003) (holding that vendor that provided televisions and cassette players was not a state actor). In affirming the district

court's dismissal of the complaint in *Bomer*, the Sixth Circuit stated, "[a]s a vendor selling products to prisoners in the custody of the Michigan Department of Corrections, [the vendor] was not acting under the color of state law and was not liable to Bomer under 42 U.S.C. § 1983." *Id.*, citing *Flagg Bros.*, 436 U.S. at 155-57; *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). (*Id.* at 6-7).

Notwithstanding its contract with the state to do so, the act of selling hygiene items to state prisons for use by its prisoners simply does not rise to the level of state action to support liability under § 1983. *See White v. Schriro,* No. 16CIV6769PAEJCF, 2017 WL 3268202, at \*6 (S.D.N.Y. July 31, 2017), *report and recommendation adopted,* 2018 WL 1384506 (S.D.N.Y. Mar. 16, 2018) (quoting *Walker v. Schriro*, No. 11 Civ. 9299, 2013 WL 1234930, at \*16 (S.D.N.Y. March 26, 2013) ("Despite providing supplies to the prison, 'Barker could not plausibly be described as one of the officials acting under color of law "who caused the harm" or did so with the requisite state of mind—namely, deliberate indifference.'")). Moreover, because the undersigned has found that BBCI was not a state actor under § 1983, there is no need to further address Plaintiff's allegations that BBCI's conduct violated the various federal constitutional provisions that are summarily addressed in his complaint or BBCI's defenses concerning those claims. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible claim for relief against BBCI under 42 U.S.C. § 1983.

       2.       State law product liability and negligence claims against BBCI.

Plaintiff's complaint also alleges that BBCI is liable for his injuries under theories of products liability and/or negligence, which are state law claims.[1] However, BBCI

---

[1] As BBCI is a North Carolina corporation, even absent any plausible § 1983 claims, there appears to be an independent jurisdictional basis for the state law claims under 28 U.S.C. § 1332 based upon diversity of citizenship.

asserts that Plaintiff has failed to allege a link between BBCI and the subject product to sufficiently state a plausible products liability or negligence claim. BBCI contends that, "at best, Plaintiff merely contends that BBCI is a supplier of toothbrushes" and that he was injured by a toothbrush, but he has not alleged that BBCI actually manufactured or supplied the subject toothbrush. (ECF No. 23 at 13). BBCI further claims that Plaintiff has not alleged any duty owed to him, or any negligent act or omission, by BBCI, or that a breach of such duty proximately caused his injury. (*Id.*) Thus, BBCI contends that "[a]bsent such a link, there can be no duty or responsibility for the product." (*Id.*)

Plaintiff's response appears to clarify that he is alleging that BBCI manufactured and distributed the subject defective toothbrush. (ECF No 27 at 1-2). His response further asserts that video and photographic evidence demonstrates that additional toothbrushes manufactured and distributed by BBCI exhibited the same defect. (*Id.*) Plaintiff's response again claims that BBCI "knew, or should have known, through the quality control process, that there were defective products being massed produced and distributed." (*Id.* at 2-3). With respect to his product liability claim, Plaintiff's response further asserts:

> A manufacturer's, or seller's, tort liability is for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product. The product liability can be based on a theory of negligence, strict liability, or breach of warranty. The legal theory by which liability is imposed on the manufacturer or seller of a defective product. Product safety is well established within liability protection law.

(*Id.* at 3).

BBCI's reply reemphasizes that, to recover on a product liability claim in West Virginia, Plaintiff must establish that "a product was defective when it left the manufacturer and the defective product was the proximate cause of [his] injuries."

*McNair v. Johnson & Johnson*, No. 2:14-cv-17463, 2015 WL 3935787, *6 (S.D.W. Va. June 26, 2015) (Copenhaver, J.), *aff'd,* 773 F. App'x 681 (4th Cir. 2019); *see also Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 680 (W. Va. 1979) (holding that a plaintiff must show that product was defective when it left the manufacturer and that the defect proximately caused his/her injury, but that recovery may be barred by plaintiff's conduct). (ECF No. 28 at 3). BBCI asserts that Plaintiff has failed to properly allege these required elements. (*Id.*) Its reply brief further states:

> His Complaint does not indicate who manufactured the allegedly defective toothbrush, what the alleged defect was, whether the toothbrush was defective when it left the manufacturer, or whether the alleged defect proximately caused his injury. A "defect in a product cannot be presumed solely from the fact that an accident occurred[.]" *Bennett v. Asco Servs., Inc.*, 612 S.E.2d 710, 717 (W. Va. 2005), quoted in *King v. Sears Roebuck & Co.*, 2013 WL 870572, *9 (S.D.W. Va. Mar. 7, 2013) (VanDervort, Mag. J.).

(*Id.* at 4). Comparing the instant case to *King*, in which the court found that a products liability claim was insufficiently pled, BBCI asserts:

> Similarly, here, Plaintiff did nothing more than allege that an accident occurred. He did not allege who manufactured the toothbrush, how it was defective, whether it was defective when it left the manufacturer, or whether the alleged defect proximately caused his injury, and he did not address whether reasonable secondary causes (normal wear and tear, abnormal use, alterations) may have caused the alleged defect. In short, Plaintiff's barebones Complaint does not permit a plausible inference that Bob Barker Company is "'liable for the misconduct alleged.'" *Raab* [*v. Smith & Nephew, Inc.*, 150 F. Supp. 3d 671, 681 (S.D.W. Va. 2015) (Johnston, C.J.)] (citing *Iqbal*, 556 U.S. at 678).

(*Id.* at 5). Therefore, BBCI argues that Plaintiff's claim(s) must be dismissed.

In West Virginia, the elements of a product liability claim based on negligence are: "(1) the manufacturer owed the consumer a duty to design/manufacture/warn regarding the product, (2) the product was defective thereby breaching that duty, (3) the breach of the duty proximately caused the plaintiff's injuries, and (4) the plaintiff was injured."

15

Philip Combs & Andrew Cooke, *Modern Products Liability Law in West Virginia*, 113 W. VA. L. REV. 417, 452 (2011); *see also Aikens v. Debow,* 541 S.E.2d 576, 580-81 (W. Va. 2000) (generally discussing the elements of negligence).

However, as further recognized in *Morningstar*, *supra*, the seminal West Virginia product liability case, a "strict liability" theory relieves the plaintiff's obligation to prove "that the manufacturer was negligent in some particular fashion during the manufacturing process and [permits] proof of the defective condition of the product as the principal basis of liability." 253 S.E.2d at 677. The *Morningstar* Court acknowledged three theories upon which a plaintiff could recover for an injury sustained from a defective product:

> We recognize that a defective product may fall into three broad, and not necessarily mutually exclusive, categories: design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the inadequacy of, warnings, instructions and labels. Characteristically, under the first two categories of defectiveness the inquiry centers on the physical condition of the product which renders it unsafe when the product is used in a reasonably intended manner. In the third category of defectiveness the focus is not so much on a flawed physical condition of the product, as on its unsafeness arising out of the failure to adequately label, instruct or warn.

*Id.* at 682.

Therefore, "the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use." *Id.* The determination of whether a product is "unsafe" is based upon a standard of a "reasonably prudent manufacturer," while "[t]he question of what is an intended use of a product carries with it the concept of all those uses a reasonably prudent person might make of the product, having in mind its characteristics, warnings and labels." *Id.*; *see also Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.,* 672 S.E.2d 345, 355 (W. Va. 2008). Because the focus of strict liability is on the defective product itself and not the

16

defendant's conduct, such a claim may be raised against any party in the chain of distribution, even "innocent seller[s]." *Dunn v. Kanawha Cty. Bd. of Educ.*, 459 S.E.2d 151, 157 (W. Va. 1995). Accordingly, liability is not limited only to the manufacturer of the product. *Id.*

Although Plaintiff's complaint does state that the toothbrush provided to him was allegedly defective, it fails to sufficiently allege that BBCI manufactured or sold the subject toothbrush (or played any other role in the chain of distribution), that the toothbrush was allegedly defective when it left the manufacturer, and that there were no secondary causes of the defect or malfunction resulting in Plaintiff's injury. Nor does the complaint specify the theory or theories of liability upon which Plaintiff is relying (negligence, strict liability, or breach of warranty). While Plaintiff's response attempts to clarify some of these issues, his contentions are still too conclusory and, at any rate, a complaint may not be amended by allegations added in a response to a motion. *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that the plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

Nonetheless, at this stage of the proceedings, the court cannot find that Plaintiff would be unable, through amendment of his complaint, to sufficiently allege the required elements of a strict products liability or negligence claim against BBCI. "[T]he Fourth Circuit has stated that a court should consider granting plaintiffs, particularly *pro se* plaintiffs, leave to amend if it dismisses a complaint based on [Rule] 12(b)(6)." *Smith v.*

*Virginia*, No. 3:08cv800, 2009 WL 2175759, at *9 (E.D. Va. July 16, 2009) (citing *Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999)). Here, although Plaintiff's products liability claim against BBCI is presently ripe for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the undersigned **FINDS** that it is in the interest of justice that Plaintiff be given an opportunity to cure the deficiencies in his complaint concerning his state law claim against BBCI before it is wholly dismissed. Accordingly, by separate order, the undersigned will grant leave to Plaintiff to file an amended complaint limited to his state law products liability claim against BBCI.

      D.     *Exhaustion of administrative remedies.*

Defendants' motions to dismiss also assert that Plaintiff did not sufficiently allege or demonstrate that he exhausted the available prison administrative remedies before filing his complaint. However, because the undersigned has recommended the dismissal of the claims against the Correctional Defendants on other grounds, there is no need to address the exhaustion defense they have raised.

With respect to BBCI, to the extent that the exhaustion requirement applies to Plaintiff's claim against BBCI, BBCI's motion simply contains a conclusory assertion that Plaintiff did not allege that he filed any grievances related to this incident and, thus, he failed to demonstrate exhaustion of administrative remedies. (ECF No. 23 at 14). Plaintiff's response to BBCI's motion to dismiss also contains a conclusory statement that he did exhaust the administrative remedy process through all three required levels. (ECF No. 27 at 4). However, neither party provided any documentary proof supporting their position and this issue requires further development. Therefore, BBCI's motion to dismiss should be denied with respect to the exhaustion defense.

## IV. RECOMMENDATIONS

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Correctional Defendants' motion to dismiss (ECF No. 14) and dismiss the claims against Defendants Murphy, Perkins, and Cavendish in their entirety. It is further respectfully **RECOMMENDED** that the presiding District Judge **GRANT IN PART** BBCI's motion to dismiss (ECF No. 22), with respect to Plaintiff's § 1983 claims against it, and **DENY IN PART** BBCI's motion to dismiss (ECF No. 22), with respect to Plaintiff's state law claim grounded in products liability and/or negligence, and leave this matter referred to the undersigned United States Magistrate Judge for additional proceedings concerning Plaintiff's state law claim pending amendment thereof.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

June 2, 2022

_____
Dwane L. Tinsley
United States Magistrate Judge